WILLIAM H. POTTER *vs.* HEMAN SMITH & another.

A provision, in shipping articles for a whaling voyage, that if any officer or seaman shall be judged by the master incompetent or indisposed to the proper discharge of the duties of his station, the master may "displace him and substitute another in his stead," and that a corresponding reduction of the lay of such officer or seaman, with reference to the duty which he may afterwards perform, shall thenceforth take effect, does not authorize the master to discharge from the vessel one who has shipped under these articles as second mate; and the effect of such a provision cannot be varied by evidence of a usage in the whaling trade never to disrate an officer to a seaman, but, when the necessity for displacing him occurs, to discharge him from the vessel.

CONTRACT to recover the plaintiff's lay in a whaling voyage.

At the trial in the superior court, before *Wilkinson*, J., it appeared that the plaintiff shipped as second mate on board the defendants' vessel, under articles the sixth of which was as follows: " It is further agreed that if any officer or seaman, after a fair trial of his abilities and disposition, shall be judged by the master incompetent or indisposed to the proper discharge of the duties of his station, the master shall have a right to displace him and substitute another in his stead, — a corresponding reduction of the lay of such officer or seaman, with reference to the duty which he may afterwards perform, thenceforth to take effect; and a reasonable increase of the lay of the individual who may thereupon be promoted to a higher station hall be made on the final adjustment of the voyage."

It further appeared that the plaintiff was discharged from the vessel during the voyage, against his will, by the master, for alleged incompetency and insubordination. " The defendants' counsel stated to the judge that, in the custom and usage of the whaling business, an officer was never disrated to a seaman, and that when the necessity occurred for the displacement of an officer he was discharged from the vessel."

The defendants requested the judge to rule that under the above article the master was the sole judge of the plaintiff's qualifications, and if he acted in good faith, his judgment in discharging the plaintiff was final, and the plaintiff could not recover; but the judge declined so to rule, and ruled that the article did not make the judgment of the master in discharging

the plaintiff final. The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*G. Marston,* ( *C. W. Clifford* with him,) for the defendants.

*T. M. Stetson,* for the plaintiff.

Morton, J. The principal question at the trial was as to th legality of the act of the master in discharging the plaintiff from the ship. The defendants justified this act under the sixth arti cle of the shipping articles, which is set out in the bill of exceptions; and asked the court to rule that, if the master acted in the matter of the discharge in good faith, his judgment in discharging the plaintiff was final and the plaintiff could not recover. The court declined so to do, but instructed the jury that the terms of the sixth article did not make the judgment of the master in discharging the plaintiff out of the vessel final.

This instruction was correct. The sixth article does not give the master the power to discharge an officer or seaman from the ship. Its obvious purpose is, to give the master the right, if he finds an officer or seaman incompetent or otherwise unfit to perform the duties of his station, to degrade or reduce him to a lower station upon the ship. The word " displace " imports this, and the subsequent provision that " a corresponding reduction of the lay of such officer or seaman, with reference to the duty which he may afterwards perform," shall thenceforth ake effect, clearly points to this construction, and is inconsistent with the construction claimed by the defendants. The article contemplates that the displaced or degraded officer or seaman is to remain on board in the station to which he may be reduced.

It is clear that the usage alleged to exist in the whaling business cannot avail the defendants. Its effect, if proved, is to control and vary the written contract, unambiguous in its terms, into which the parties have deliberately entered. The authorities are conclusive that evidence of such a usage is inadmissible. *The Reeside,* 2 Sumner, 567. *Ware* v. *Hayward Rubber Co.* 3 Allen, 84. *Dickinson* v. *Gay,* 7 Allen, 29, and cases cited.

These views render it unnecessary to consider the other questions presented at the argument. *Exceptions overruled.*