### PEOPLE'S ICE COMPANY *vs.* EMPLOYERS' LIABILITY ASSURANCE CORPORATION.

Suffolk.    November 17, 20, 1893. — March 27, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Insurance against Employer's Liability for Personal Injuries to Employees — Construction of Policy — Evidence — Custom.*

An application for insurance against an employer's liability for personal injuries to his employees was for a " policy to be based upon the following statement of facts which are to be considered as warranties," among which were the following : " The employer's address is 240 Ruggles St., Boston. The employer's works are situated at (state all) as above and where cutting ice. The trade or business is ice-dealers. The operations carried on by the work-people are cutting and handling ice. The machinery in use is such as is necessary in cutting ice. There is no information tending to vary the risk, except as herein stated — No. The insurance is to cover the expenditure in wages of five thousand dollars." Upon this application a policy was issued in consideration of a premium which was

therein stated to be "based upon the estimated yearly pay-roll of the employer, amounting to $5,000," and which also recited that the statements in the application "the employer warrants to be true, and agrees shall be incorporated herein"; and further stated that "the sums paid to the employer shall be for personal injury, within the meaning of this policy, caused to any employee in his service while engaged in the employer's work in any of the occupations or at any of the places mentioned in the schedule hereto," which contained the following: "Description of occupation of employees: All operations connected with the business of ice-dealers." "Places at which employees to whom wages are paid are employed: At 240 Ruggles Street, Boston, Massachusetts, and elsewhere in the service of the employer." *Held*, that injuries caused to employees of the assured by the fall of an ice-house, while in process of construction by him, not in the season for cutting ice, were not within the policy. *Held, also,* that evidence that it was customary for persons in the ice business to erect their own ice-houses was immaterial.

CONTRACT upon a policy of insurance against liability for personal injuries occasioned to the plaintiff's employees, issued to the plaintiff by the defendant.   Trial in the Superior Court, before *Braley*, J., who directed the jury to return a verdict for the defendant; and, at the plaintiff's request, reported the case for the determination of this court.   The material facts appear in the opinion.

The case was argued at the bar in November, 1893, and afterwards was submitted on the briefs to all the judges.

*R. M. Morse*, ( *C. E. Hellier* with him,) for the plaintiff.

*J. Lowell & H. M. Rogers*, for the defendant.

ALLEN, J.   In October and November, 1888, before the time when there was any ice to cut, the plaintiff, which was a corporation engaged in the ice business, was building a large new ice-house at Wigwam Pond in Dedham, it already having some smaller ice-houses there, as well as at other places.   During the process of construction, the new ice-house fell, causing injury to several of the plaintiff's employees, to whom the plaintiff afterwards paid compensation.   The question is whether these injuries were within the policy.

It seems to us that they were not.   The policy and the application are to be construed together.   The policy, in referring to the application, says, "the statements in which the employer warrants to be true, and agrees shall be incorporated herein."

Looking then first at the application, it gives the annual wages at $5,000, and applies for a "policy to be based upon the following statement of facts which are to be considered as warranties."

Amongst other things stated are these: "The employer's address is 240 Ruggles St., Boston." "The employer's works are situated at (state all) as above and where cutting ice." "The trade or business is ice-dealers." "The operations carried on by the work-people are cutting and handling ice." "The machinery in use is such as is necessary in cutting ice." "There is no information tending to vary the risk, except as herein stated — No." "The insurance is to cover the expenditure in wages of five thousand dollars."

Upon this application a policy was issued·in consideration of a premium which was therein stated to be "based upon the estimated yearly pay-roll of the employer, amounting to $5,000." The policy stated that "the sums paid to the employer shall be for personal injury, within the meaning of this policy, caused to any employee in his service while engaged in the employer's work in any of the occupations or at any of the places mentioned in the schedule hereto." The policy was to run for twelve months, and there was a provision in the conditions annexed that if the amount of wages paid by the employer in that period should exceed the amount on which the premium had been paid, a further premium should be paid. The schedule above referred to contained the following: "Description of occupation of employees: All operations connected with the business of ice-dealers." "Places at which employees to whom wages are paid are employed: At 240 Ruggles Street, Boston, Massachusetts, and elsewhere in the service of the employer."

Taking the policy and the application together, the risk assumed was for injuries received in connection with the carrying on of the business. No doubt the words used should be construed with reasonable liberality, but they are not broad enough to cover the work of erecting a new and large building which is to be used for storing ice. The erection of new ice-houses or stables for the enlargement or better accommodation of the business is not an operation connected with the business, within the meaning of the policy and application, when construed together. There is a difference between ordinary day by day repairs, which are incident to the carrying on of the business, and the erection of large new buildings which, when completed, are to be used in the business. Such buildings might be built wholly by independent contractors.

Whether they are so or not, the agreement between these parties does not refer to or include an operation of that character.   Looking at all of the provisions above recited, we are unable to put so broad a construction upon the risk assumed as would be necessary in order to sustain the plaintiff's case.

Since the contract of the defendant did not include such a risk, it is immaterial whether it was customary for people in the ice business to erect their own ice-houses.   The case depends upon the construction of the contract, and the custom if proved would not enlarge the defendant's liability.   See *Benson* v. *Gray*, 154 Mass. 391, and cases there cited; *Davis* v. *Galloupe*, 111 Mass. 121; *Potter* v. *Smith*, 103 Mass. 68.

*Judgment on the verdict.*